Les A. NATALI, Plaintiff,

v.

The MUNICIPAL COURT OF the CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA, et al., Defendants.

No. 50737.

United States District Court,
N. D. California.
Aug. 29, 1969.

Kenneth C. Zwerin, San Francisco, Cal., for plaintiff.

John Jay Ferdon, Dist. Atty., Jerome T. Benson, Asst. Dist. Atty., City and County of San Francisco, San Francisco, Cal., for defendants.

ZIRPOLI, District Judge.

## JUDGMENT FOR PLAINTIFF FOR RETURN OF FILM.

This is the first of three [1] cases presently before this Court involving the seizure of allegedly obscene movie films. The Court has not reviewed the film here involved nor any prints thereof and therefore does not and for the reasons hereinafter made obvious need not for the purposes of this case decide whether or not said film is in fact and in law obscene.

Plaintiff in the instant case filed a complaint under the Civil Rights Act in which he properly invokes the jurisdiction of this Court under the provisions of 42 U.S.C. § 1983. In his complaint he seeks an order requiring the defendants or their agents to return the print of a motion picture known as "The Sex Act", and he further seeks an order restraining the Municipal Court of the State of California in and for the City and County of San Francisco from proceeding criminally against him for a violation of Section 311.2 of the Penal Code of California [2] alleged to have been committed on January 5, 1968, by exhibiting the said motion picture.

The complaint, in support of the relief prayed for by plaintiff, alleges:

That from December 29, 1967, to January 5, 1968, there was exhibited at the theatre called "The Movie" located in

---

1. The other cases before the Court are Demich, Inc. v. Joseph Alioto et al., Civil No. 51994, and DeRenzy v. Thomas Cahill et al., Civil No. 52001. In *DeRenzy*, plaintiff's prayer requests the Court to find the films seized not to be obscene. Seventy-eight still photographs of the films seized were offered as an exhibit in the case. These still photographs are by any standard, including the standard established in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), cheap hard core pornography, completely devoid of any redeeming social value and wholly lacking in artistic or literary merit. To the average person, applying contemporary community standards, the dominant theme of these still photographs appeals to prurient interests. If these still photographs are a reflection of the films taken as a whole, the films would not come within the area of constitutionally protected speech or press. A review of the thirty-three still photographs of the films seized in the *Demich* case leads to the same conclusion. However, there is no need for the Court to actually review these films in their entirety, since the determinative question in these cases is not whether the films are or are not obscene, but rather, whether they were seized pursuant to constitutionally permissible procedures.

2. Section 311.2 of the Penal Code of California provides:

(a) Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor.

(b) The provisions of this section with respect to the exhibition of, or the possession with intent to exhibit, any obscene matter shall not apply to:

A motion picture machine operator acting within the scope of his employment as an employee of any person exhibiting motion pictures pursuant to a license or permit issued by a city or county provided that such operator has no financial interest in his place of employment, other than wages.

San Francisco, California, the above-mentioned motion picture; that plaintiff is the owner and entitled to the possession of all prints of said motion picture in the United States; that on January 5, 1968, a judge of the defendant court issued a search warrant and a warrant for the arrest of plaintiff for a violation of Section 311.2 of the Penal Code of California; that on January 5, 1968, defendant Maloney, a police officer, arrested petitioner at "The Movie" for a violation of said Section 311.2 and seized and took into his possession the said film; that no opportunity was afforded the plaintiff to be present at the time the search warrant and warrant of arrest were issued, nor was plaintiff aware of any hearing prior to the issuance of said warrants and the seizure of said film; that no adversary hearing of any kind was had to determine whether or not said film was in fact obscene, and that said film was not viewed by the magistrate who issued the search warrant and the warrant of arrest; that at the time defendant Maloney seized said motion picture film or print, he did not act under authority of the search warrant. The complaint then alleges that defendant Maloney has followed a practice of causing the seizure of films on the basis of alleged obscenity without a prior adversary hearing in violation of the First and Fourteenth Amendments to the Constitution of the United States; that plaintiff has exhausted all available state remedies for the return of the film; and that the defendants threaten to introduce in evidence, at plaintiff's trial, the said motion picture.

A motion to dismiss the complaint and a motion for summary judgment in favor of defendants were both denied by this Court and thereafter the parties hereto submitted this cause on a transcript of the proceedings had in the aforesaid Municipal Court on plaintiff's (there defendant's) motion to suppress evidence.

Plaintiff is the owner of the film and has standing to bring this action.

The record supports the allegations of the complaint in that it affirmatively establishes that there was no adversary proceeding on the issue of obscenity prior to the issuance of the search warrant and that the defendant Maloney did not act under or pursuant to the search warrant at the time he seized the film. In this respect the transcript of the Municipal Court proceedings on the examination of defendant Maloney by counsel for plaintiff in this case reflects:

Q. Was anybody present other than yourself and Judge Constine at the time that this search warrant was signed by Judge Constine? A. Yes, there was somebody in there, I can't remember who was in his chambers.

Q. Well, this was done ex parte in his chambers? A. In chambers, yes.

Q. Was notice given to the defendant or his counsel that this proceeding was about to take place? a. No.

Q. You didn't purport to act on the search warrant, did you, at the time of the arrest? A. No.

Q. You made no inventory of the contraband—alleged contraband that was confiscated by you? A. Not on this warrant.

Q. On the search warrant form? A. Well, I made it on my police report.

Q. Yes, I am talking about the search warrant that provides that an inventory must be left with the person from whom an alleged contraband is to be taken. You didn't do that? A. No.

Q. Frankly you didn't act on it? A. That's right.

■ It is well established that films are a form of expression entitled to the protection of the First and Fourteenth Amendments to the Constitution [3] and

3. Joseph Burstyn Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952);

Kingsley International Pictures Corp. v. Regents of University of State of New

under the ruling of A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), it properly follows that if a state may not constitutionally suppress printed matter without a prior judicial determination, rendered after an adversary hearing, that the material is obscene, it may not do so for films.

The defendants contend that though the seizure in the instant case was not made pursuant to or in reliance upon the search warrant (and hence was in legal effect a seizure without a search warrant), the seizure was nevertheless valid as incident to a lawful arrest. While there may be some question as to the lawfulness of the arrest in the instant case, since the Court did not see and was not furnished a copy of the warrant of arrest and the affidavit in support thereof, it will assume for present purposes that the arrest was lawful. Nevertheless the Court is satisfied that plaintiff's First and Fourteenth Amendment rights were violated by the seizure, regardless of the lawfulness of the arrest, and that he is entitled to a return of the film.

Defendants' reliance on the case of People v. DeRenzi, decided by the Court of Appeal of the State of California, First Appellate District, Division One, on August 6, 1969, is misplaced, for even if it and the case of Flack v. Municipal Court, 66 Cal.2d 981, 59 Cal.Rptr. 872, 429 P.2d 192 (1967), were controlling (and this Court does not so decide), the conduct of defendants does not come within the teachings of these California cases since Officer Maloney at no time purported to act under or pursuant to the search warrant. In DeRenzy the Court, relying upon Flack, said:

In the municipal court special proceeding a question was raised, and a conflict appeared, whether the film was seized as an incident to DeRenzy's arrest or pursuant to the search warrant. *If the former, under the in-been invalid."* (Emphasis supplied.)

And in *Flack*, the Court said at page *stant facts the seizure would have* 991, 59 Cal.Rptr. at page 878, 429 P.2d at page 198: "Thus, with the exception of a situation involving a legitimate emergency, *even if the search is contemporaneous with an arrest*, a search warrant must be secured prior to any search for or seizure of material alleged to be obscene." (Emphasis supplied.) An unexecuted search warrant does not meet this test of *Flack*.

At best we have in the instant case a seizure as an incident to lawful arrest (without search warrant). Such seizure of a film is constitutionally impermissible. Absent a clear and specific ruling of the Supreme Court of the United States, in this Court's view the case of Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968), is controlling. In that case the Court in its interpretation of the applicability of A Quantity of Copies of Books v. Kansas, *supra*, at page 204 said:

However, we feel that we are bound by the opinion of the Supreme Court in *Books*. * * * The lesson of *Books* is that law enforcement officers cannot seize allegedly obscene publications without a prior adversary proceeding on the issue of obscenity. Such seizure violates the First Amendment to the Constitution of the United States, and is a prior restraint condemned by the Supreme Court. In light of *Burstyn, supra, Kingsley Pictures, supra* and *Jacobellis, supra, these rules apply to motion pictures as well.* Allegedly obscene publications *or movies* are not to be treated the same way as narcotics, gambling paraphernalia and other contraband. The legal rules governing the former are different from the latter. * * * [*T*]*here must be an adversary proceeding on the issue of obscenity be-

York, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959); Jacobellis v.

Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

*fore a movie can be constitutionally seized."* (Emphasis supplied.)

While it might be argued under Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 637, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), that a procedure " 'designed to focus searchingly on the question of obscenity' " does not necessarily require an adversary proceeding on the issue of obscenity before a movie can be constitutionally seized, such argument is without persuasive force and runs counter to the rulings made by the federal courts both before and after the decision in Lee Art Theatre, Inc. v. Virginia, *supra.* Every pertinent federal decision that this Court has been able to find, reported and unreported, with one possible exception,[4] clearly adheres to the above quoted holding in Metzger v. Pearcy, *supra.*

In this district on July 7, 1969, Judge Peckham of this Court held in Doak v. Prelsnick, (No. 51034), that "as a matter of law plaintiff was entitled to a prior adversary hearing on the issue of obscenity before a search warrant could issue."

In Sayles v. Graham (D.Ariz. March 17, 1969), the Court said, "The law as it stands today does not make a distinction between books and movies to the extent asserted by the defendants. Before a movie can be constitutionally seized, there must be a judicial determination after an adversary proceeding, that the movie is obscene."

In Abrams and Parisi, Inc. v. Canale, 309 F.Supp. 1360 (W.D.Tenn. Jan. 16, 1969), the Court said, "In support of its contention that a prior adversary hearing is constitutionally necessary, under the First and Fourteenth Amendments, before a film is actually seized, plaintiff primarily relies on A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.

Ct. 1723, 12 L.Ed.2d 809 (1964). The 'opinion of the court' by Justice Brennan, it appears to us clearly so holds."

In Tyrone, Inc. v. Wilkinson, 294 F. Supp. 1330, 1333 (E.D.Va.1969), the Court said, "The defendants' argument that they are not bound by the decision of the A Quantity of Copies of Books v. Kansas holding of the United States Supreme Court, coupled with the defendant, Wilkinson's announced intention to continue the authorizing of the seizure of allegedly obscene motion pictures without affording the possessors and exhibitors of same a prior adversary hearing to determine if same are obscene, leaves this Court no alternative except to issue an appropriate injunction."

In Cambist Films, Inc. v. Tribell, 293 F.Supp. 407, 409 (E.D.Ky.1968), the Court said, "The dissemination of a particular work, which is alleged to be obscene, should be completely undisturbed until an independent determination of obscenity has been made by a judicial officer, including an adversary hearing."

In Cambist Films, Inc. v. Illinois, 292 F.Supp. 185, 188 (N.D.Ill.1968), the Court said, "More important, by definition, the heart of an adversary proceeding before suppression of a medium of expression may be effected, is the opportunity for adversary presentation to ensure that expression will not be suppressed without contest and justification. The absence of a formal adversary proceeding is therefore in fact and in law constitutionally critical. Our freedoms survive and thrive through institutions and procedures such as the adversary hearing required in this case."

In the instant case, no adversary proceedings having been held on the issue of obscenity, the seizure of the film in question was unlawful and in violation

---

4. In Cambist Films Inc. v. Duggan, 298 F.Supp. 1148 (W.D.Penn.1969), the district judge in commenting on one of two seizures of allegedly obscene films (Allegheny County and Westmoreland County), sustained the seizure in Westmoreland County as *mere evidence* seized incident to a lawful arrest for an offense committed in the presence of the arresting officer. This holding which is clearly contra to the cases cited above also runs counter to the present California rule enunciated in DeRenzy, *supra* and Flack, *supra.*

of plaintiff's First and Fourteenth Amendment rights.

 Though the seizure was unlawful, it does not follow that this Court should intervene in the criminal prosecution pending in the Municipal Court. The constitutionality of Section 311.2 of the Penal Code of California, under which the prosecution will proceed, is not under attack. The request for an order restraining the Municipal Court from proceeding criminally against the plaintiff for a violation of said section of the Penal Code must be denied. While a return of the film to plaintiff may constitute an indirect interference with the pending prosecution in the state court, a refusal to order the return of the film would mean condoning the unconstitutional seizure thereof.[5]

Accordingly,

It is ordered:

That the defendants and their agents or such of them as may have possession of the film herein involved shall forthwith return the same to plaintiff; and

It is further ordered that plaintiff's request for an order restraining the Municipal Court of the State of California in and for the City and County of San Francisco from proceeding criminally against plaintiff for a violation of Section 311.2 of the Penal Code of California is denied.

In making the foregoing order the Court is mindful of the fact that the Supreme Court of the United States has not set forth specific guide lines governing motion pictures and the performing arts and considering the evidentiary problems involved in the enforcement of the obscenity laws relating to such forms of expression, it would be most helpful to know whether the pronouncement of the Supreme Court in Lee Art Theatre, Inc. v. Virginia, *supra*, that the procedure for search and seizure of motion picture films must be "designed to focus searchingly on the question of obscenity" makes absolute the requirement that there be a prior adversary hearing. Hence the foregoing order and directive to defendants is stayed for a period of ten (10) days and such other period as this Court shall direct should the defendants file a notice of appeal from this order within the period of this stay.

---

5. Sayles v. Graham (D. Ariz., March 17, 1969).