117 N.J. Super. 409 (1971)
285 A.2d 43
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT CHESTER OSBORNE, CARL JABLONSKI AND THEODORE MICHELE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1971.
Decided December 10, 1971.
*410 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Robert H. Simandl argued the cause for appellants (Messrs. Simandl, Leff, Kraemer & Waldor, attorneys).
Mr. David S. Baime, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, P.J.A.D.
We granted leave to appeal from the denial of a motion to suppress evidence seized under search warrants in connection with impending criminal prosecutions for exhibiting an allegedly obscene film. Important First and Fourteenth Amendment questions appeared to be involved. For reasons which follow, we affirm.
Defendants are the managers, respectively, of three movie theatres in Essex County in each of which there commenced, on April 21, 1971, the public showing of the film, "Censorship in Denmark." A sheriff's detective who viewed the *411 films filed an affidavit explicitly describing in objective terms the content of the movie, and on the basis thereof he obtained search warrants from a County Court judge for two of the theatres, authorizing seizure of the prints of the film. A third warrant, for the other theatre, was issued by a municipal magistrate who viewed the film in person. Pursuant to the warrants, the prints of the film being exhibited were seized and defendants were arrested on April 21, 1971 for violation of the criminal obscenity statute, N.J.S.A. 2A:115-1 et seq. As of the date of filing of briefs herein the matters were awaiting grand jury action.
At the hearing of the motion to suppress, and before us, defendants have argued that the seizure of the films in advance of an adversarial hearing and judicial determination of their obscenity is a violation of First Amendment rights of freedom of expression remediable against state activity via the Fourteenth Amendment. Defendants do not contest the fact that, based on the detective's affidavit, probable cause of obscenity was made out, but they contend that in the present procedural posture of this litigation the question of obscenity vel non is irrelevant. They aptly cite a plethora of decisions holding that in order to assure against previous restraint of lawful communications, frequently distinguishable from obscene ones by only a dim shadowy line, no form of expression may be suppressed as obscene in advance of a judicial determination of obscenity in adversarial proceedings or unless attended by carefully circumscribed procedural safeguards looking toward speedy adjudication of the issue of obscenity in such proceedings, none of which prerequisites was here satisfied. State v. Hudson County News Co., 41 N.J. 247, 260-261 (1963); Marcus v. Property Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Blount v. Rizzi, 400 U.S. 410, 416-417, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971).
*412 Motion pictures are within the ambit of First Amendment protection, if not obscene. Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). However, the procedural safeguards aforementioned are, in principle, as fully applicable to state prosecution of alleged offenders in this area as in the case of other forms of expression. Freedman v. Maryland, supra; Metzger v. Pearcy, 393 F.2d 202 (7 Cir.1968); Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4 Cir.1969), cert. den. 396 U.S. 985, 90 S.Ct. 477, 24 L.Ed.2d 449 (1969); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2 Cir.1969), cert. den. 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970); Astro Cinema Corp. Inc. v. Mackell, 422 F.2d 293 (2 Cir.1970); Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3 Cir.1969); and see Overstock Book Company v. Barry, 436 F.2d 1289, 1295 (2 Cir.1970); but see United States v. Wild, 422 F.2d 34 (2 Cir.1969), cert. den., sub nom. Wild v. U.S., 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971); cf. Flack v. Municipal Court for Anaheim-Fullerton J.D., 66 Cal.2d 981, 59 Cal. Rptr. 872, 429 P.2d 192 (Sup. Ct. 1967).
Defendants additionally contend that the State had available for expeditious advance determination of the issue of obscenity, without need for seizure on an ex parte warrant, the provisions of L. 1962, c. 166 (N.J.S.A. 2A:115-3.5 to 3.9). This statute creates a summary proceeding looking toward a speedy hearing and determination, and providing for an order enjoining dissemination and directing destruction of materials found obscene. The court so adjudicating would, inferentially, be empowered to order the materials held for evidential use in any impending criminal proceedings prior to their destruction. The act would seem to have been adopted by our Legislature for the express purpose of enabling expeditious suppression of obscene materials, with due regard to the constitutional burden of the State to establish judicially the fact of obscenity prior to actual suppression. See Freedman v. Maryland, supra (380 *413 U.S. at 58-60, 85 S.Ct. 734); Blount v. Rizzi, supra (400 U.S. at 416-417, 91 S.Ct. 423). Note the recent employment of the statute by a county prosecutor in Keuper v. Wilson, 111 N.J. Super. 489 (Ch. Div. 1970), opinion supplemented in 111 N.J. Super. 502 (1970).
The motion judge denied the request for suppression, primarily on the basis of Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968). There the court, in a per curiam opinion, reversed a state court conviction for showing an obscene film, on the narrow ground that the film had been seized on the basis of a warrant supported by an affidavit of a police officer containing only conclusionary assertions of obscenity. But we do not consider that the court's confinement, in this particular instance, of its grounds of reversal to Fourth Amendment considerations, is any basis to surmise relaxation by the court of the First and Fourteenth Amendment principles rehearsed above. This is particularly so in light of the recent citation with approval in Blount v. Rizzi, supra (400 U.S. at 415, 91 S.Ct. 423) of Freedman v. Maryland, supra, in particular relation to the rule against previous restraint.
So much conceded to defendants, we are yet not persuaded that the single prints of the controversial film held by the prosecuting authorities should be ordered returned to defendants. They were taken under valid search warrants. They could be lost or tampered with out of the prosecutor's hands. Possession should be retained by him to assure availability before grand or petit jury of the identical film shown. As the State concedes in its brief, "Nothing prevents the defendants from showing copies of the motion picture." It was admitted by defendants at oral argument that other prints of the film were and are readily available. If the prosecuting authorities sought to seize such substitute prints on a reshowing of the film by any defendant, without their first pursuing the remedy afforded by N.J.S.A. 2A:115-3.5 to 3.9, mentioned above, they would *414 plainly be acting at peril of judicial prohibition because they would then, in the light of their overall activity, be effectively censoring the film without prior adversarial adjudication of obscenity, contrary to the imperative constitutional doctrine above outlined.
We have not overlooked certain of the cases cited above, and relied on by defendants, which, in a substantially similar context, have required the prosecutor to turn over the seized films to the exhibitor. Those courts have deemed the state's interest in the film as criminal evidence adequately served by conditioning the return on the defendant's being ordered or subpoenaed to supply a print to the State for trial of the charge and by restraining any tampering. See, e.g., Tyrone, Inc. v. Wilkinson, supra (410 F.2d at 640-641); Bethview Amusement Corp. v. Cahn, supra (416 F.2d at 412). We take a different view of the matter. The State should not be placed at any degree of inconvenience or imperilment of evidence in preparation for trial of an alleged crime, where the constitutional rights of the film exhibitor are protected by such a judicial caveat as the monition we have expressed above concerning repetitive interference by the authorities with the showing of a particular movie in advance of adversarial adjudication of its obscenity.
Affirmed; no costs.